UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FREDERICK E. GRIGGER, JR.,** | Civil Action No. 20-14491 (FLW) |
| **Plaintiff,** | |
| v. | **MEMORANDUM & ORDER** |
| **MERCER COUNTY CORRECTIONAL,** et al., | |
| **Defendants.** | |

Plaintiff has filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, and the Court previously granted Plaintiff's IFP application. *See* ECF Nos. 1-2. Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted). Conclusory allegations do not suffice. *See id.* Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

1

Plaintiff's Complaint is not a model of clarity, but he appears to allege that various state officials and Mercer County Correctional Center ("MCCC") violated his constitutional rights by denying him bail and ignoring unsafe conditions at MCCC during the COVID-19 pandemic.

Plaintiff alleges that former Attorney General Gurbir Grewal ("Grewal") failed to ensure that prosecutors were following Executive Order # 103[1] and releasing inmates due to the dangers of COVID-19. *See* Complaint at 6. Grewal also allegedly ignored the seriousness of COVID-19. *Id.* According to the Complaint, Grewal's prosecutors testified at Plaintiff's bail hearing on August 10, 2020, that Plaintiff would be safe from COVID-19. Complaint at 9. Plaintiff allegedly wrote to Grewal, but he received no response. *Id.*

Plaintiff alleges that Governor Phil Murphy ("Murphy") also failed to ensure that Executive Order # 103 was followed and failed the brief the public about the conditions at Mercer County Jail. *See* Complaint at 6. Murphy allegedly ignored the health and safety of pretrial detainees at the county jails when he issued executive orders related to COVID-19. *Id.* at 11. Plaintiff appears to allege that the executive orders issued by Murphy were deficient with respect to pretrial detainees in the county jails and/or those inmates <u>under</u> the age of 60 years old. *Id.* at 11. Plaintiff further alleges that the bail reform system is a "failure in whole." *Id.*

Plaintiff also alleges that Mike Mennuti ("Mennuti"), the prosecutor in Plaintiff's criminal case, failed to follow Executive Order # 103 and recommend releasing Plaintiff on bail due to the dangers of COVID-19, despite the fact that Plaintiff was charged with a third-degree crime and had "a 3-4 score." Mennuti also "downplayed" the danger of COVID-19. *Id.* at 13.

---

[1] Executive Order 103, issued by Governor Philip D. Murphy on March 9, 2020, declared the existence of a Public Health Emergency in the State for COVID-19.

Plaintiff alleges that Brian Hughes ("Hughes") failed to manage MCCC in a safe manner during the COVID-19 pandemic and is responsible for numerous health and safety violations. *Id.* at 12.  Plaintiff wrote to Hughes, but he failed to respond.  *See* Complaint at 6, 11.

Plaintiff has also sued Warden Charles Ellis for failing to adhere to CDC guidelines for social distancing at MCCC and for reporting "false information."  Plaintiff also complains about a lack of "mask exchange," a lack of running showers, no water fountains on units, lack of testing, lack of medical help from CFH Health Services staff, and lack of information about COVID-19, but he provides few facts about these conditions.[2]  *See id.* at 7.

Plaintiff has also sued "[MCCC] (Freeholders)" for failing to have a facility free of serious defects that might harm inmates health and safety.  *See* Complaint at 6.

Plaintiff is seeking damages for "long or short term medical health[,]" Complaint at 8, but he does not provide any facts to suggest that he has any high risk medical conditions or that he suffered any medical issues at MCCC as a result of contracting COVID-19 or otherwise.

At the time, he filed his Complaint, Plaintiff was a pretrial detainee.  Plaintiff's IFP application lists his date of detention at MCCC as February 29, 2020.  *See* ECF No. 1-2 at 2. After he submitted his Complaint, Plaintiff updated his address to Bayside State Prison.  It appears that Plaintiff was convicted of aggravated assault in violation of N.J.S.A. 2C:12-1(b),

---

[2] Plaintiff also submitted an unsigned type-written letter dated July 23, 2020, that is addressed "To whom it may concern[.]"  ECF No. 1-3.  The letter lists purported safety violations at MCCC in connection with the COVID-19 pandemic.  *See id.*  Because this letter is unsigned and does not contain any allegations <u>specific to Plaintiff</u>, the Court declines to construe the letter as part of Plaintiff's Complaint.  Plaintiff is free to submit an Amended Complaint that includes some or all of the issues in the letter, with proper factual support, to the extent Plaintiff experienced these issues while confined at MCCC.

3

and was sentenced to a four-year term of imprisonment on April 22, 2021.[3]  In total, it appears that Plaintiff was incarcerated as a pretrial detainee at MCCC for approximately 14 months.

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right.  *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).

The Court first construes Plaintiff to allege that the failure to release him on bail during the COVID-19 pandemic violated his right to due process under the Fourteenth Amendment.  It is well-established that pretrial detention implicates a liberty interest entitled to due process protections.  *United States v. Delker*, 757 F.2d 1390, 1397 (3d Cir. 1985).  Here, however, Plaintiff does not allege that he was denied a bail hearing or that he was denied any procedural safeguards during his bail hearing.  *See, e.g., U.S. v. Salerno*, 481 U.S. 739, 752 (1987).  Rather, he alleges that he was improperly denied release on bail due to the COVID-19 pandemic, and he seeks to hold Mennuti, Grewal, and Murphy liable.

Plaintiff appears to allege that Mennuti, the prosecutor in his criminal case, argued at Plaintiff's bail hearing that bail was not appropriate and stated that Plaintiff would be safe from COVID-19.  Assuming the truth of these allegations, Mennuti is protected by prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Root v. Liston*, 444 F.3d 127, 131 (2d Cir. 2006) ("absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application"); *see also Nash v. Kenney*, 784 F. App'x. 54, 57 (3d Cir.

---

[3] *See* New Jersey Department of Corrections Offender Search, available at https://www20.state.nj.us/DOC_Inmate/details?x=1284038&n=0 (last visited July 5, 2022).

2019) (same).  As such, the § 1983 claims premised on the denial of bail are dismissed with prejudice as to Mennuti on the basis of prosecutorial immunity.

Plaintiff further alleges that Attorney General Grewal is liable as Mennuti's supervisor; however, Grewal may not be held liable on the basis of *respondeat superior*.  *See Iqbal*, 556 U.S. at 676 (civil rights defendants may not be held liable under *respondeat superior* theory of liability).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*  Because the claims against Grewal are based on an impermissible theory of *respondeat superior*, the Court dismisses these claims at screening for failure to state claim for relief.

Plaintiff also appears to allege that Governor Murphy's executive orders directing the emergency release of prisoners were not expansive enough and did not apply to pretrial detainees and/or those under 60 years old.  In that regard, on April 10, 2020, Governor Murphy issued Executive Order # 124, which provided for an eligible inmate's emergency release from prison to home during the COVID-19 pandemic.[4]  *See also Matter of Request to Modify Prison*

---

[4] Plaintiff's Complaint refers only to Executive Order # 103.

*Sentences*, 242 N.J. 357, 385 (2020).  The four categories for priority early release included: Individuals aged 60 years or older; Individuals with high risk medical conditions; Individuals whose sentences expire within the next three months; and Individuals who were denied parole within the last year.[5]  *See* "Governor Murphy Signs Executive Order to Establish a Process to Grant Temporary Reprieve to Certain At-Risk Inmates," available at https://www.nj.gov/governor/news/news/562020/20200410d.shtml, last visited July 6, 2022.

At the time he filed his Complaint, Plaintiff was a pretrial detainee and not a convicted prisoner.  Under New Jersey's Criminal Justice Reform Act ("CJRA"), defendants who pose a serious risk of non-appearance, danger, or obstruction can be detained before trial if no combination of conditions of release will reasonably guard against those risks.  N.J.S.A. 2A:162-15.  Similarly, the United States Supreme Court has explained that an arrestee's right to freedom from pretrial detention is subordinated to other interests under certain circumstances— particularly where there has been an adjudication that detention is necessary because an "arrestee presents an identified and articulable threat to an individual or the community," *Salerno*, 481 U.S. at 750-51, or to "ensure [an arrestee's] presence at trial," *Bell v. Wolfish*, 441 U.S. 520, 523 (1979).

Due process concerns impose limits on the length of pretrial detention.  Pretrial detention schemes necessarily balance the liberty interest of individuals presumed innocent against public safety concerns posed by high-risk defendants.  *See Salerno*, 481 U.S. at 748-51.  The process is constitutional so long as it serves regulatory rather than punitive purposes.  *Salerno*, 481 U.S. at 746-48; *Bell*, 441 U.S. at 535-40.  There is no bright line rule for the length of time a defendant

---

[5] The bulletin specifically notes that "[i]ndividuals who have been convicted of a serious offense, including murder, manslaughter, kidnapping, sexual assault, robbery, aggravated assault, or any offense subject to the No Early Release Act, are ineligible for temporary reprieve."  *See id.*

may be held prior to trial.  *See United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986) ("Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial.").

New Jersey has set a limit of two years for pretrial detention (excluding delays attributable to the defendant) if the prosecutor is not ready to proceed to trial.  *See* N.J.S.A. 2A:162-22(a)(2)(a).  On February 11, 2021, the New Jersey Supreme Court held that, in light of the COVID-19 pandemic and the resulting delay in trials, pretrial detainees may move to reopen their detention hearings under N.J.S.A. 2A:162-19(f) if they (1) have been detained for at least six months and (2) can make a preliminary showing that, based on length of detention, health risks, and other factors, that they are entitled to relief.[6]  *See Matter of Request to Release Certain Pretrial Detainees*, 245 N.J. 218, 225, 240 (2021).

Here, Plaintiff was detained for a total of 14 months, less than New Jersey's overall limit of two years for pretrial detention.  Thus, the length of his pretrial detention is not punitive, and he has not provided any facts to suggest that he has any particularized health risks, a key factor in determining whether emergency release is warranted due to the COVID-19 pandemic.  As such, even assuming that some pretrial detainees could make a showing that due process required their emergency release on bail during the COVID-19 pandemic, Plaintiff has not made that

---

[6] In determining whether the delay caused by the pandemic is material to a particular defendant's risk, the New Jersey Supreme Court instructed trial judges to consider the following factors: "(1) the length of detention to date as well as the projected length of ongoing detention; (2) whether a defendant has been or will be in detention longer than the likely amount of time the person would actually spend in jail if convicted; (3) the existence and nature of a plea offer; (4) a defendant's particularized health risks, if any, and whether they present a heightened risk the individual will contract COVID-19; and (5) other factors relevant to pretrial detention that are outlined in N.J.S.A. 2A:162-20." *Id.* at 226–27 (N.J., 2021)

7

showing. Plaintiff also has not shown that Governor Murphy's alleged failure to expand emergency release to additional categories of inmates violated his right to due process or any federal right, and this claim is dismissed for failure to state a claim for relief.

Finally, to the extent Plaintiff sought anything other than a new bail hearing (a claim that appears moot), such a claim falls within the core of habeas corpus because it challenges the fact or duration of his confinement and may not be brought in a civil rights action. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (A prisoner or pretrial detainee in state custody cannot use a § 1983 to challenge "the fact or duration of his confinement," but instead must seek habeas corpus relief or the appropriate state relief.)

For all these reasons, Plaintiff's due process claims regarding the failure to release him on bail are dismissed as to all Defendants pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Because it appears that any claim for a new bail hearing is moot, and Plaintiff has pleaded guilty and has been sentenced for the underlying crime, the Court denies leave to amend with respect to this claim.

The Court also construes Plaintiff to allege that his conditions of confinement at MCCC during the COVID-19 pandemic amount to punishment. In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty. *Hubbard v. Taylor* 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*). The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate governmental purpose." *Hubbard II*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 538). "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Id.* at 236 (quoting *Bell*, 441 U.S. at 549). The Third Circuit instructs courts to consider the

8

totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d. Cir. 2020) (citing *Hubbard I*, 399 F.3d 150, 159–160 (2005))*; see also*, *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir 1983) (though double-bunking involved cramped, crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must also acknowledge that practical considerations of detention justify limitations on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546; *see also Hope*, 972 F.3d at 326.

As the Supreme Court cautioned in *Bell v. Wolfish*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 540 n. 23 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 584 (1984) (noting the "very limited role that courts should play in the administration of detention facilities"). Furthermore, in *Hope*, which dealt with immigration detainees, who have rights similar to pretrial detainees, the Third Circuit warned against making "ideal" conditions, such as the ability to socially distance, a "sine qua non of constitutional detention." *Id.* at 327. The Third Circuit reiterated that the "touchstone for the constitutionality of detention is whether

conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)).

Here, Plaintiff provides a brief list of alleged deprivations, but he has not provided sufficient supporting facts to suggest that these conditions amount to punishment, alone or collectively. These allegations include the following: lack of social distancing, lack of "mask exchange," lack of COVID-19 testing, lack of medical help, and lack of information about COVID-19. Plaintiff also lists conditions that appear unrelated to the COVID-19 pandemic, such as a lack of showers and water fountains in the units, but he does not provide sufficient facts about these alleged deprivations. His conditions of confinement claims are therefore dismissed for failure to state a claim for relief under § 1915(e)(2)(B). Plaintiff is free to submit an amended complaint that provides additional facts about the conditions he experienced at MCCC, including the length of time he endured the specific deprivations and/or unsafe conditions, and whether prison officials provided alternatives for showering and drinking water.

The Complaint also briefly mentions a lack of medical care. As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment. *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003). In order to state a claim for relief, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale*, 318 F.3d at 582 (citation omitted). Here, Plaintiff fails to state a claim for relief because

he provides no facts showing any prison officials were deliberately indifferent to his serious medical needs.[7] As such, this claim is dismissed for failure to state a claim for relief.

Moreover, if Plaintiff submits and Amended Complaint, he should provide additional facts showing how supervisory Defendants Ellis and Hughes are involved in the alleged wrongs. As relevant here, "to hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Here, Plaintiff generally alleges that Hughes and Ellis failed to ensure safe conditions at MCCC, but he has not alleged that the unsafe conditions were the result of deficient policies that Ellis and/or Hughes implemented or that either of these Defendants were deliberately indifferent to a known risk of harm presented by COVID-19. As such, the Complaint against Ellis and Hughes is subject to dismissal on this basis as well.

Plaintiff also appears to assert that Grewal and Hughes are liable because they failed to respond to his letters. But the failure to respond to grievances, without additional involvement, does not state a claim for relief under § 1983. *See Mercado v. Ellis*, No. 11-6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiff's only claims against the named

---

[7] The Complaint also refers to medical staff at CFG Health Services Inc. ("CFG"). To hold CFG liable, Plaintiff would need to provide facts showing that CFG had a relevant policy or custom and that policy or custom was the moving force behind the constitutional violation. *See, e.g., Natale*, 318 F.3d at 583–84 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

defendants are based on their failure to investigate or respond to Plaintiff's letters and grievances); *McKinney v. Prosecutor's Office*, Civ. No. 13–2553, 2014 WL 2574414, at *9 (D.N.J. Jun. 4, 2014) (collecting cases and dismissing claim premised on the failure to respond to grievances).

Finally, the Court dismisses the Complaint as to MCCC, as this entity is not a proper Defendant in a § 1983 action. *See Crooks v. Passaic Cnty. Sheriff's Department/Jail*, 2007 WL 923330, at *2 (D.N.J. Mar. 26, 2007) (collecting cases). The § 1983 claims against MCCC are dismissed with prejudice.[8]

In conclusion, Plaintiff's due process claims regarding denial of bail are dismissed with prejudice against Mennuti on the basis of prosecutorial immunity and dismissed for failure to state a claim for relief as to Grewal and Murphy. Leave to amend as to this claim is denied. The conditions of confinement claims are dismissed with prejudice as to MCCC and without prejudice as to Ellis and Hughes for failure to state a claim for relief. The inadequate medical care claims are dismissed without prejudice as to Ellis and Hughes. As explained in this Memorandum and Order, Plaintiff is granted leave to submit an Amended Complaint within 45

---

[8] Even if the Court were to construe Plaintiff to assert a § 1983 claims against the County of Mercer, he fails to state a claim for relief. The liability of a municipality under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Municipalities may not be found vicariously liable under the doctrine of *respondeat superior* for claims that their employees violated an individual's civil rights. *Ed. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff seeking to hold a municipality liable for a civil rights violation caused by a municipal employee must allege facts showing that the municipality's policy or custom is the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694; *see also Bryan Cnty.*, 520 U.S. at 403; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). Here, there are no allegations that a policy or custom of the County of Mercer caused any of the alleged violations, but Plaintiff may submit an Amended Complaint if he can provide facts showing his constitutional rights were violated as a result of a policy or custom of the County Of Mercer.

days, accompanied by a request to reopen this matter, to the extent he can cure the deficiencies in his Fourteenth Amendment conditions of confinement claims and/or inadequate medical care claims.

**IT IS THEREFORE,** on this 8th day of July 2022,

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**ORDERED** that the due process claims premised on the denial of bail are dismissed **WITH PREJUDICE** as to Mike Mennuti on the basis of prosecutorial immunity pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**ORDERED** that the due process claims premised on the denial of bail are dismissed for failure to state claim for relief pursuant to 28 U.S.C. 1915(e)(2)(B) as to Gurbir Grewal and Governor Phil Murphy; and it is further

**ORDERED** that leave to amend the bail-related claims is **DENIED**; and it is further

**ORDERED** that the Fourteenth Amendment conditions of confinement claims are dismissed **WITH PREJUDICE** as to MCCC for failure to state a claim for relief pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**ORDERED** that the Fourteenth Amendment conditions of confinement claims are dismissed **WITHOUT PREJUDICE** against Warden Charles Ellis and Brian Hughes for failure to state a claim for relief pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**ORDERED** that the Fourteenth Amendment claims of inadequate medical care are dismissed **WITHOUT PREJUDICE** as to Ellis and Hughes for failure to state a claim for relief pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 45 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Fourteenth Amendment conditions of confinement or inadequate medical care claims; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and **CLOSE** this matter accordingly.

    s/Freda L. Wolfson  
Freda L. Wolfson  
U.S. Chief District Judge